# ATTACHMENT A

ØŠÒÖ

ŒŒGŒHÁRŴÞÁFÆÁÆQŒ HÔ ÁÚT
SŒ Ò Á ÔuWÞ VÝ
Ù Ù ÔÜ Ù Ù ÒÜ Â ÒŠ Ò ÙS
Ò Š Ò Ò
ÔŒÜ ÒÂ Œ HÈŒ E Ò H H Ù ÒÄ ÙŒÒ

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| AIDAN ISRAEL and CHALSE OKOROM | |
| Plaintiffs, | Case No.: |
| vs. | |
| SAFECO INSURANCE COMPANY OF AMERICA | COMPLAINT |
| Defendant. | |

COME NOW, Aidan Israel and Chalse Okorom by and through their attorney, Sam Leonard of Leonard Law, PLLC and complain against Safeco Insurance Company of America ("Safeco") as follows:

## I.    PARTIES

1.1    Aidan Israel is a natural person residing in Seattle, Washington.

1.2    Chalse Okorom is a natural person residing in Seattle, Washington.

1.3    Aidan Israel is a "person" as defined in Washington's Consumer Protection Act ("CPA").

1.4    Chalse Okorom is a "person" as defined in the CPA.

1.5    Safeco is an insurance company doing business in Washington that is regulated under Title 48 of the Revised Code of Washington.

COMPLAINT - 1

Leonard Law. PLLC
9030 35th Ave. SW, Ste. 100
Seattle, Washington 98126
Ph. (206) 486-1176
Fax (206) 458-6028

1.6     Safeco is licensed to do business in Washington as an insurance company.

## II.     JURISDICTION AND VENUE

2.1     This Court has jurisdiction over Safeco and the claims in this action under RCW 4.12.020 and RCW 19.86.090.

2.2     Venue is appropriate in King County as this is where Plaintiffs reside, the actions involved herein occurred in King County, the contract at issue herein was entered into in Washington State and the Defendant does business in King County.

## III.     FACTS

3.1     On or about April 12, 2022, Aidan Israel entered into a contract with Safeco for rental insurance (hereinafter the "Insurance Policy").

3.2     The Insurance Policy covered losses of personal property resulting from theft.

3.3     A true and correct copy of the Insurance Policy is attached hereto as Exhibit A.

3.4     On June 14, 2022, Plaintiffs' personal property was stolen by Miggy Movers, LLC ("Miggy").

3.5     Under the terms of the Insurance Policy, Safeco was required to cover the loss of Mr. Israel and Ms. Okorom up to the amount listed as the applicable coverage limit for losses resulting from theft.

3.6     Mr. Israel filed a claim with Safeco and filed a police report.

3.7     Mr. Israel and Ms. Okorom each created an inventory of the loss property with an estimate of the value of the property.

3.8     Safeco denied Mr. Israel's claim.

3.9     Mr. Israel hired counsel who filed suit against Miggy.

3.10    Mr. Israel's counsel contacted a Safeco agent regarding Safeco's denial of Mr.

COMPLAINT - 2

Leonard Law. PLLC
9030 35th Ave. SW, Ste. 100
Seattle, Washington 98126
Ph. (206) 486-1176
Fax (206) 458-6028

Israel's claim and the Safeco agent did not provide a reason for the denial of coverage.

#### IV.   FIRST CLAIM
*Violation of Washington's Consumer Protection Act (RCW 19.86 et. seq.)*

4.1    Plaintiffs incorporate herein all preceding paragraphs.

4.2    The CPA makes illegal unfair or deceptive conduct occurring in trade or commerce that affects the public interest and causes injury to a person's business or property.

4.3    Safeco's conduct described herein was either unfair or deceptive.

4.4    Safeco's conduct occurred in trade and in commerce.

10.1    Safeco's conduct affects the public interest because it has the capacity to injure other persons or has injured other persons and because the business of insurance affects the public interest.

4.5    Safeco's unfair denial of Plaintiff Israel's claim caused injury to both Plaintiffs in their business or property.

#### V.   SECOND CLAIM
*Breach of Contract*

5.1    Plaintiffs incorporate herein all preceding paragraphs.

5.2    On April 12, 2022, Mr. Israel and Safeco entered into an insurance agreement, whereby Safeco was to provide coverage for the loss of personal property resulting from theft. Mr. Israel was a first-party beneficiary of that contract and Ms. Okorom, as a co-resident of the rented property insured by Safeco, was a third-party beneficiary of the Insurance Policy.

5.3    Safeco breached its contract with Mr. Israel when it denied his claim relating to Miggy's theft of Mr. Israel's and Ms. Okorom's personal property.

5.4    Safeco's breach caused Plaintiffs damages in an amount to be established at trial that include, but are not limited to, the reasonable value of Plaintiffs' property at the time of loss.

COMPLAINT - 3

5.5     Safeco should be ordered to comply with its obligations under the contract.

5.6     Safeco is liable for the damages that its breach of the Insurance Policy caused.

## VI.     RELIEF REQUESTED

Wherefore, Plaintiffs pray for the following relief:

A.  An order enjoining Defendant from continuing to engage in the conduct alleged herein.

B.  For an award of special and general damages in amounts that shall be determined.

C.  For an award of treble damages permitted under RCW 19.86.090 up to $25,000.

D.  For an award of attorneys' fees, costs of suit and prejudgment interest; and

E.  Such other relief as the Court deems just and proper.

DATED June 13, 2023

/s/ Sam Leonard
_____
Sam Leonard WSBA #46498
Leonard Law, PLLC
9030 35th Ave SW, Ste. 100
Seattle, Washington 98126
Telephone: 206-486-1176
Fax: 206-458-6028
Email: sam@seattledebtdefense.com

*Attorney for Plaintiffs*

COMPLAINT - 4

Leonard Law. PLLC
9030 35th Ave. SW, Ste. 100
Seattle, Washington 98126
Ph. (206) 486-1176
Fax (206) 458-6028

# EX. A

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

 **Safeco** Insurance™

A Liberty Mutual Company

IMA SELECT LLC
6200 LBJ FWY STE 200
DALLAS        TX  75240-6359

April  12, 2022

Policy Number:  OY8602631
24-Hour Claims:  1-800-332-3226
Policy Service:  (972) 458-8700
Online Account Services:  www.safeco.com

**THIS IS NOT A BILL.**

AIDAN  ISRAEL
109 12TH AVE E
#303
SEATTLE WA  98102-6260

Welcome  to Safeco]

We believe insurance  shouldn't  be any more complex than it has to be.   Welcome  to an easier experience  with Safeco.

Enclosed  is your new homeowners policy.   Read it through carefully.   It will give you a detailed description  of the type and amount of your coverage, any deductibles  (your out-of-pocket costs) that apply and the effective date of your policy.   If, after reading  your policy, you have any questions  or want to find out about discounts  that may apply to your policy, please call (972) 458-8700.

The premium  for your policy is $423.00 for the April  12, 2022 to April 12, 2023 policy term.   When you receive  your billing  statement, please review it carefully  for the amount and date of your next payment.   Please also verify that your requested  payment method is correct.

You can uncomplicate  your bill paying experience  by choosing  our Automatic Deduction  Payment Plan, which offers the convenience  of monthly deductions  from your checking  account that can be scheduled  any day of the month you like.   Enroll in Automatic Deduction  online at www.safeco.com.

For added convenience,  visit www.safeco.com  and make use of our automated  services available  to you including,  but not limited to:

- Make a payment by online check, or credit card.
- Review your billing  history.
- Change your billing  due date.
- View your policy documents.
- Order a copy of your policy and/or insurance ID cards.
- Report to us a name change,  or change of address.
- Review Safeco's Producer Compensation  Disclosure.

For all other assistance  please call your agent at (972) 458-8700.

PLEASE  SEE REVERSE
**SAFECO INSURANCE COMPANY OF AMERICA**
P O BOX 704000, SALT LAKE CITY, UT 84170

OC-429/EP  10/13

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

Thank you for your business.   We look forward to serving you.

Sincerely,

Tyler Asher
President, Safeco Insurance

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS



**A Liberty Mutual Company**

## Consumer Privacy Statement

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information") and we value you as a customer.

To learn more about how Safeco collects and uses your personal information, please read the following notice.

### Safeco's sources of information about you

We collect personal information about you from different sources, including:

- The information you provide on applications or other forms (such as your name, address and Social Security number);
- Your transactions with us, our affiliates or others (such as your payment history and claims information);
- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record or claims history); and
- Your independent insurance producer (such as updated information pertaining to your account).

### Safeco's use of your personal information

We only disclose personal information about our customers and former customers as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. These third parties may include independent insurance producers authorized to sell Safeco insurance products, independent contractors (such as automobile repair facilities and property inspectors), independent claims representatives, insurance support organizations, other insurers, auditors, attorneys, courts and government agencies. We may also disclose your personal information to other financial institutions with whom we have joint marketing agreements. When we disclose your information to these individuals or organizations, we require them to use it only for the reasons we gave it to them.

We may also share information about our transactions (such as payment history and products purchased) and experiences with you (such as claims made) within our Safeco family of companies.

Safeco does not sell your personal information to others and we do not provide your information to third parties for their own marketing purposes.

### Independent Safeco Insurance Agents

The independent insurance agents authorized to sell Safeco products are not Safeco employees and not subject to Safeco's Privacy Policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco distributor to learn more about their privacy practices.

### Information about Safeco's web site

If you have internet access and want more information about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

**Protecting your personal information from unauthorized access**

We maintain physical, electronic and procedural safeguards to protect your personal information. Our employees are authorized to access customer information only for legitimate business purposes.

**State Privacy Laws**

This privacy statement may be supplemented by privacy laws in your state. We will protect your information in accordance with state law.

**This Privacy Statement applies to the following members of the Safeco family of companies:**

**American Economy Insurance Company**
**American States Insurance Company**
**American States Insurance Company of Texas**
**American States Lloyds Insurance Company**
**American States Preferred Insurance Company**
**First National Insurance Company of America**
**General Insurance Company of America**
**Insurance Company of Illinois**
**Liberty County Mutual Insurance Company**
**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco Insurance Company of Indiana**
**Safeco Insurance Company of Oregon**
**Safeco Lloyds Insurance Company**
**Safeco National Insurance Company**
**Safeco Surplus Lines Insurance Company**

© 2011 Safeco Insurance Company of America, Member of Liberty Mutual Group. All Rights Reserved.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

## IMPORTANT FLOOD INSURANCE NOTICE

This policy does not cover damage to your property caused by flooding.

The federal government offers flood insurance through the National Flood Insurance Program to residents of communities that participate in its program. You can learn more about the National Flood Insurance Program at www.floodsmart.gov or by calling (888) 379-9531.

CHO-6392/WAEP 5/09

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS



**A Liberty Mutual Company**

## SAFECO INSURANCE COMPANY OF AMERICA
Administrative office: 175 Berkeley St., Boston, MA 02116 (A stock insurance company.)

## RENTERS POLICY DECLARATIONS

**INSURED:**
AIDAN ISRAEL
109 12TH AVE E
#303
SEATTLE WA  98102-6260

**POLICY NUMBER:** OY8602631
**POLICY PERIOD FROM:** APR. 12 2022
**AT:** 12:01 A.M.
**TO:** APR. 12 2023

**RESIDENCE PREMISES:**
Same

**AGENT:**
IMA SELECT LLC
6200 LBJ FWY STE 200
DALLAS          TX   75240-6359

TELEPHONE:  (972) 458-8700

---

**IMPORTANT NOTICES**

- Your new policy is effective April 12, 2022.
- **THIS POLICY DOES NOT PROVIDE EARTHQUAKE COVERAGE.**

| COVERAGES | LIMIT | PREMIUM |
|---|---|---|
| SECTION I - PROPERTY COVERAGES | | |
| C - Personal Property | $    21,000 | $    92.00 |
| D - Loss of Use | 12 MONTHS | |
| SECTION II - LIABILITY COVERAGES | | |
| E - Personal Liability (each occurrence) | 500,000 | 45.00 |
| F - Medical Payments (each person) | 5,000 | |
| INCLUDED COVERAGES | | |
| Full Value on Personal Property | | Included |

| OPTIONS | LIMIT | PREMIUM |
|---|---|---|
| Option E - Scheduled Personal Property | $    24,862 | $   174.00 |
| Option FFF - Loss Assessment | 10,000 | 10.00 |
| Option YY - Water Back-up and Sump Overflow | 5,000 | 65.00 |
| Option KK - Special Personal Property | | 25.00 |
| Option ID - Identity Recovery - $250 deductible | 25,000 | 12.00 |

| DEDUCTIBLE(S) | PERCENTAGE | AMOUNT |
|---|---|---|
| Section I | N/A | $    500 |

| | |
|---|---|
| **TOTAL ANNUAL PREMIUM** | **$    423.00** |

You may pay your premium in full or in installments. There is no installment fee for the following billing plans: Full Pay. Installment fees for all other billing plans are listed below. If more than one policy is billed on the installment bill, only the highest fee is charged. The fee is:
  $2.00 per installment for recurring automatic deduction (EFT)
  $5.00 per installment for recurring credit card or debit card
  $5.00 per installment for all other payment methods

*REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

# SAFECO INSURANCE COMPANY OF AMERICA
# RENTERS POLICY DECLARATIONS

CONTINUED

**POLICY NUMBER:**   OY8602631

```
┌─────────────────────────────────────────────────────────────────────────┐
│ POLICY FORMS APPLICABLE TO THIS POLICY:                                   │
└─────────────────────────────────────────────────────────────────────────┘
```

| | |
|---|---|
| CHO-6004/EP 11/99 | - RENTER'S POLICY |
| CHO-6240/EP 8/06 | - OPTION FFF LOSS ASSESSMENT COVERAGE |
| CHO-1227/EP 11/89 | - EXECUTION CLAUSE - HO/DF |
| CHO-6248/EP 6/98 | - OPTION YY WATER BACK - UP SUMP OVERFLOW |
| CHO-6400/EP 5/98 | - SCHEDULED PERSONAL PROPERTY ENDORSEMENT |
| CHO-6201/WAEP 10/04 | - SCHEDULE PERSONAL PROPERTY |
| CHO-6221/WAEP 10/04 | - OPTION KK - SPECIAL PERSONAL PROPERTY |
| CHO-6389/EP 8/06 | - OPT ID - IDENTITY FRAUD EXP COVG |
| CHO-6104/WAEP R1 2/15 | - SPECIAL PROVISIONS - RENTERS |

...REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS...

**SCHEDULED PERSONAL PROPERTY ENDORSEMENT**     **POLICY NUMBER:** OY8602631

**NAMED INSURED:** AIDAN ISRAEL

## IMPORTANT NOTICE — LOSS SETTLEMENT

**FINE ARTS AND CATEGORY V JEWELRY:** We will pay the amount shown for each scheduled article which is agreed, as stated on this endorsement, to be the value of the article.
**ALL OTHER PROPERTY AND CATEGORY J JEWELRY:** The value of the property insured is not agreed upon but shall be ascertained at the time of loss or damage. Please refer to the Loss Settlement provisions within **Option E — Scheduled Personal Property.**
THE ABOVE ARE SUBJECT TO ALL POLICY PROVISIONS. IF YOU NEED FURTHER EXPLANATION PLEASE REFER TO YOUR POLICY OR CONTACT YOUR AGENT.

| ITEM NO. | CAT. | DESCRIPTION OF PROPERTY COVERED | INSURED AMT. |
|---|---|---|---|
| 1 | F | POWERHOUSE 2X10 600W 80HM BASS CABINET | $ 520 |
| 2 | F | PRS GUITAR | 3,200 |
| 3 | F | BASS GUITAR | 1,500 |
| 4 | F | STUDIO MONITOR 1 | 500 |
| 5 | F | STUDIO MONITOR 2 | 500 |
| 6 | F | AUDIO INTERFACE | 200 |
| 7 | F | VENUS ELECTRIC GUITAR OD GUITARS | 3,895 |
| 8 | F | FOCUSRITE CLARRETT 8 OCTO PRE AUDIO INTERFACE | 850 |
| 9 | F | SUHR CLASSIC-X HSS GUITAR | 2,800 |
| 10 | F | DINGWALL NGE 5-STRING BASS GUITAR BLACK | 2,000 |
| 11 | F | YAMAHA THRII PRACTICE AMP | 299 |
| 12 | F | NOVATION 61SL MKIII | 700 |
| 13 | F | SHURE SM57 DYNAMIC INSTRUMENT MICROPHONE | 99 |
| 14 | F | QUAD CORTEX MANUFACTURER NEURAL DSP TECHNOLIGIE | 1,599 |
| 15 | F | SEYMOUR DUNCAN POWERSTAGE | 500 |
| 16 | F | HESU M212 CABINET | 900 |
| 17 | F | ASTERIA CUSTOM GUITAR | 4,800 |

**TOTAL AMOUNT OF INSURANCE BY CATEGORY**
A - FINE ARTS
B - CELLULAR PHONES AND OTHER MOBILE EQUIPMENT
C - CAMERAS, GUNS, STAMP AND COIN COLLECTIONS
F - FURS, MUSICAL INSTRUMENTS & PROPERTY NOT OTHERWISE CLASSIFIED $    24,862
J - JEWELRY
L - COMPUTERS AND OTHER MEDIA EQUIPMENT
S - SILVERWARE
T - FARM PERSONAL PROPERTY

INSURED'S COPY
DATE PREPARED: APR. 12 2022

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS



A Liberty Mutual Company

# RENTERS POLICY

## Table of Contents

|  |  | Beginning On Page |
|---|---|---|
| | **INSURING AGREEMENT** | 1 |
| **SECTION I PROPERTY COVERAGES** | **COVERAGE C — PERSONAL PROPERTY** | 1 |
| | Personal Property We Cover | |
| | Personal Property We Do Not Cover | |
| | Personal Property Losses We Cover | |
| | Personal Property Losses We Do Not Cover | |
| | **COVERAGE D —LOSS OF USE** | |
| | **ADDITIONAL PROPERTY COVERAGES** | |
| | **PROPERTY CONDITIONS** | |
| **SECTION II LIABILITY COVERAGES** | **COVERAGES E AND F — PERSONAL LIABILITY AND MEDICAL PAYMENTS** | 8 |
| | Liability Losses We Cover | |
| | Liability Losses We Do Not Cover | |
| | **ADDITIONAL LIABILITY COVERAGES** | |
| | **LIABILITY CONDITIONS** | |
| **SECTIONS I AND II** | **PROPERTY AND LIABILITY CONDITIONS** | 14 |
| | **POLICY DEFINITIONS** | 15 |
| **OPTIONAL COVERAGES** | Option E - Scheduled Personal Property | |
| | Option FFF - Loss Assessment | |
| | Option YY - YY - Water Back-up Coverage | |
| | Option KK - Special Personal Property | |
| | Option ID - Identity Recovery | |

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

## INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy.

This policy applies only to losses occurring during the policy period.

## SECTION I — PROPERTY COVERAGES

### PERSONAL PROPERTY WE COVER

### COVERAGE C — PERSONAL PROPERTY

1.  Personal property owned or used by any **insured** is covered while it is anywhere in the world. When personal property is usually located at an **insured's** residence, other than the **residence premises**, coverage is limited to 10% of the Coverage **C** limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

    During the time the **residence premises** is under construction by or for the **insured**, our limit of liability for personal property other than on the **residence premises** shall be equal to the amount specified for Coverage **C**. Our total limit shall not exceed the policy limit for Coverage C in any one loss.

2.  At your request we cover:

    a.  personal property owned by others while the property is on that part of the residence premises occupied exclusively by any **insured;**

    b.  personal property owned by a guest or a **residence employee,** while the property is at any residence occupied by any **insured.**

3.  We cover:

    a.  motorized land vehicles not subject to motor vehicle registration or licensed for road use and used solely to service the **residence premises;**

    b.  disassembled parts of a motorized land vehicle while located on the **residence premises;**

    c.  golf carts;

    d.  vehicles designed for the handicapped and not licensed for road use; and

    e.  devices or instruments for the transmitting, recording, receiving or reproduction of sound or pictures, which are not permanently installed in a motorized land vehicle.

4.  The following groups of personal property are covered only up to the special limit shown. The special limit is the total amount available for that group for any one loss and does not increase the Coverage **C** limit.

    a.  $250 on money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

    b.  $3,000 on rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

    c.  $1,500 on securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

        This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

        This limit includes the cost to research, replace or restore the material from the lost or damaged medium.

    d.  $1,500 on watercraft, including their trailers, furnishings, equipment and outboard motors.

    e.  $1,500 on trailers not used with watercraft.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

**f.** $1,500 on any one article, but not more than $3,000 in the aggregate for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**g.** $3,000 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

Silverware, goldware and pewterware include:

**(1)** plateware, flatware, hollowware, tea sets, trays, trophies and the like;

**(2)** other utilitarian items made of or including silver or gold; and

**(3)** all items of pewterware.

**h.** $5,000 on *business* property, not excluded elsewhere, while located on the *residence premises.*

**i.** $1,000 on *business* property, not excluded elsewhere, while located away from the *residence premises.*

**j.** $200 on tapes, records, discs or other media in a motor vehicle or other motorized land conveyance on or away from the *residence premises.*

**k.** $5,000 on any one article, but not more than $10,000 in the aggregate, for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

**l.** $2,000 on grave markers.

---

## PERSONAL PROPERTY WE DO NOT COVER

**1.** Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

**2.** Animals, birds or fish.

**3.** Motorized land vehicles subject to motor vehicle registration or licensed for road use, including their equipment and accessories while in or upon the vehicle.

**4.** Any device or instrument, including any accessories or antennas, for the transmitting, recording, receiving or reproduction of sound or pictures which are permanently installed in a motor vehicle.

**5.** Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**6.** Property of roomers, boarders and other tenants not related to any *insured.*

**7.** Property in a location regularly rented or held for rental to others by any *insured;* but this exclusion does not apply to property of an *insured* in a sleeping room rented to others by an *insured* on the *residence premises.*

**8.** Property, away from the *residence premises,* rented or held for rental to others.

**9.** *Business* property or merchandise:

**a.** in storage;

**b.** held as a sample; or

**c.** held for sale or delivery after sale.

**10.** *Business* documents, records or data regardless of the medium on which they exist.

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

---

## PERSONAL PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in Coverage **C** — Personal Property caused by a peril listed below except as limited or excluded.

**1. Fire or lightning.**

**2. Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a building with:

**a.** continuous walls on all sides extending from ground level to the roof;

**b.** doors and windows in the walls at various locations; and

**c.** a continuous roof sheltering all areas within the wall perimeter.

**3.** **Explosion.**

**4.** **Riot or civil commotion.**

**5.** **Aircraft,** including self-propelled missiles and spacecraft.

**6.** **Vehicles,** meaning impact by a vehicle.

**7.** **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations, such as slash burns.

**8.** **Vandalism or malicious mischief.**

**9.** **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

**a.** committed by any *insured* or by any other person regularly residing on the *insured location;*

**b.** in, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

**c.** from that part of a *residence premises* rented by any *insured* to other than an *insured.*

This peril does not include loss caused by theft that occurs away from the *residence premises* of property while at any other residence owned, rented to, or occupied by any *insured,* except while an *insured* is temporarily residing there.

Property of a student who is an *insured* is covered while at a residence away from home.

**10.** **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11.** **Weight of ice, snow or sleet** which causes damage to property contained in a building.

**12.** **Collapse** of a building or any part of a building.

This peril does not include settling, cracking, shrinking, bulging or expansion.

**13.** **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

**a.** to the appliance or system from which the water or steam escaped;

**b.** caused by or resulting from freezing except as provided in the peril of freezing below; or

**c.** on the *residence premises* caused by accidental discharge or overflow which occurs off the *residence premises.*

**14.** **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**15.** **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the *residence premises* while the dwelling is unoccupied, unless you have used reasonable care to:

**a.** maintain heat in the building; or

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

    **b.**   shut off the water supply and drain the system and appliances of water.

**16.**  **Sudden and accidental damage from artificially generated electrical current.**

**17.**  **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the *residence premises.* There is no coverage if breakage of glass is caused by *earthquake.* There is no coverage for loss or damage to the glass.

---

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss:

**1.**  **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow.

    We do cover direct loss by fire, explosion or theft.

**2.**  **Water Damage,** meaning:

    **a.**   flood, surface water, waves, tidal water, tsunami, overflow of a body of water, or spray from any of these, whether or not driven by wind;

    **b.**   water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

    **c.**   water which backs up through sewers or drains originating outside of the *residence premises'* plumbing system; or

    **d.**   water which backs up, overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

    Direct loss by fire, explosion or theft resulting from water damage is covered.

**3.**  **Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the *residence premises.* If any Personal Property Losses We Cover ensues on the *residence premises,* we will pay only for the ensuing loss.

**4.**  **Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

**5.**  Loss caused directly or indirectly by War, including the following and any consequence of any of the following:

    **a.**   undeclared war, civil war, insurrection, rebellion, or revolution;

    **b.**   warlike act by a military force or military personnel; or

    **c.**   destruction or seizure or use for a military purpose.

    Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**6.**  **Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

**7.**  **Intentional Loss,** meaning any loss arising out of any act committed:

    **a.**   by or at the direction of any *insured;*

    **b.**   with the intent to cause a loss.

**8.**  **Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

**9.**  **Weather** that contributes in any way with a cause or event excluded in this section to produce a loss. However, any ensuing loss not excluded is covered.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

10. **Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

    **a.** planning, zoning, development, surveying, siting;

    **b.** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **c.** materials used in repair, construction, renovation or remodeling; or

    **d.** maintenance;

of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

---

## COVERAGE D — LOSS OF USE

1. If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense,** meaning any necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

   Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, but not to exceed 12 months.

2. If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover:

   **Fair Rental Value,** meaning the **fair rental value** of that part of the *residence premises* you rent to others or hold for rental, less any expenses that do not continue while the premises is uninhabitable.

   Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 12 months.

3. If a civil authority prohibits you from use of the *residence premises* as a result of direct damage to neighboring premises by a loss we cover in this policy we cover the **Additional Living Expense** as provided under **1.** or **Fair Rental Value** as provided under **2.** above for no more than two weeks during which use is prohibited.

The periods of time under **1., 2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

---

## ADDITIONAL PROPERTY COVERAGES

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for a loss we cover. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

   We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the *residence premises,* provided the trees damage covered property. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the *residence premises,* for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the *residence premises,* Vandalism or Malicious mischief and Theft.

   We will pay up to 10% of the limit of liability that applies to Coverage **C** for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

3. **Reasonable Repairs.** We will pay up to $5,000 for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

4. **Fire Department Service Charge.** We will pay, up to $500, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

   We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Building Additions and Alterations.** We cover, as an additional amount of insurance under Coverage **C**, the building additions, alterations, fixtures, improvements or installations, made or acquired at your expense, to that part of the *residence premises* used exclusively by you. The limit of liability for this coverage shall not exceed 10% of the limit of liability that applies to Coverage **C.**

7. **Arson Reward.** We will pay up to $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, we will not pay more than $5,000 per event regardless of the number of persons providing information.

8. **Locks.** We will pay the reasonable expenses you incur to rekey locks on exterior doors of the dwelling located on the *residence premises,* when the keys to those locks are part of a covered theft loss.

   No deductible applies to this coverage.

---

## SECTION I — PROPERTY CONDITIONS

1. **Deductible.** In case of loss under Section **I** — Property Coverages of this policy, we cover only that part of the loss over the applicable deductible stated in the Declarations.

   The deductible does not apply to **Coverage D — Loss Of Use** or Fire Department Service Charge.

2. **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your personal property and building additions and alterations. To simplify your responsibility of keeping your personal property insured to value during fluctuating economic conditions, we will suggest annual changes, either up or down, of your policy limits. This suggestion will be made on the renewal date of your policy, applied pro rata during the policy period, and will be based upon average factors for your area supplied to us by recognized appraisal agencies.

   You will be notified in advance of the new amount of coverage. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

3. **An *Insured's* Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

   a. cooperate with us in the investigation, settlement or defense of any claim or suit;

   b. give immediate notice to us or our agent;

   c. notify the police in case of loss by theft;

   d. protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

   e. prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *actual cash value* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. as often as we reasonably require:

      (1) exhibit the damaged and undamaged property;

      (2) provide us with records and documents we request and permit us to make copies; and

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

      (3)  submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other *insured.* You shall not interfere with us examining any other *insured.*

    **g.**  submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1)  the time and cause of loss;

      (2)  interest of the *insured* and all others in the property involved and all encumbrances on the property;

      (3)  other insurance which may cover the loss;

      (4)  changes in title or occupancy of the property during the term of the policy;

      (5)  specifications of any damaged building and detailed repair estimates;

      (6)  an inventory of damaged personal property described in **3.e.;**

      (7)  receipts for **Additional Living Expenses** incurred or records supporting the **Fair Rental Value** loss.

**4.**  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    **a.**  to the *insured* for more than the amount of the *insured's* interest at the time of loss; or

    **b.**  for more than the applicable limit of liability;

  whichever is less.

**5.**  **Loss Settlement.** Covered property losses are settled at *actual cash value* at the time of loss but not exceeding the smallest of the following amounts:

    **a.**  the applicable limit of liability;

    **b.**  the direct financial loss you incur; or

    **c.**  our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

**6.**  **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    **a.**  repair or replace any part to restore the pair or set to its value before the loss; or

    **b.**  pay the difference between *actual cash value* of the pair or set before and after the loss.

**7.**  **Appraisal.** If you and we do not agree on the amount of *actual cash value* or amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

  Each party will:

    **a.**  pay its own appraiser; and

    **b.**  bear the other expenses of the appraisal and umpire equally.

**8.**  **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage.

**9.**  **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

**10.**  **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

    **a.**  we reach agreement with you;

    **b.**  there is an entry of a final judgment; or

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

c.   there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by any *insured.*

12. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

13. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

14. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

15. **Salvage Value.** Any value that may be realized from *salvage* will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to *salvage.*

---

## SECTION II — LIABILITY COVERAGES

---

### LIABILITY LOSSES WE COVER

### COVERAGE E — PERSONAL LIABILITY

If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

1.   pay up to our limit of liability for the damages for which the *insured* is legally liable; and

2.   provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

### COVERAGE F — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury.* Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees.* As to others, this coverage applies only:

1.   to a person on the *insured location* with the permission of any *insured;* or

2.   to a person off the *insured location,* if the *bodily injury:*

   a.   arises out of a condition on the *insured location* or the ways immediately adjoining;

   b.   is caused by the activities of any *insured;*

   c.   is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured;* or

   d.   is caused by an animal owned by or in the care of any *insured.*

---

### LIABILITY LOSSES WE DO NOT COVER

1.   **Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others** do not apply to *bodily injury* or *property damage:*

   a.   which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured;*

   b.   arising out of *business* pursuits of any *insured* or the rental or holding for rental of any part of any premises by any *insured.*

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

This exclusion does not apply to:

**(1)** Activities which are ordinarily incident to non-***business*** pursuits except as excluded in **h.** below;

**(2)** Coverage **E** for the occasional or part-time ***business*** pursuits of any ***insured*** who is under 23 years of age;

**(3)** the rental or holding for rental of a residence of yours:

    **(a)** on an occasional basis for the exclusive use as a residence;

    **(b)** in part, unless intended for use as a residence by more than two roomers or boarders; or

    **(c)** in part, as an office, school, studio or private garage;

**c.** arising out of the rendering or failing to render professional services;

**d.** arising out of any premises owned or rented to any ***insured*** which is not an ***insured location;***

**e.** arising out of the ownership, maintenance, use, loading or unloading of:

**(1)** aircraft.

This item **e.(1)** does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**(2)** motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any ***insured.***

You have coverage for the following:

    **(a)** a trailer not towed by or carried on a motorized land vehicle;

    **(b)** a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

        **i.** not owned by any ***insured;*** or

        **ii.** owned by any ***insured,*** while on an ***insured location;***

    **(c)** a motorized golf cart;

    **(d)** a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of an ***insured location,*** which is:

        **i.** not designed for travel on public roads; and

        **ii.** not subject to motor vehicle registration, licensing or permits; or

    **(e)** a motorized land vehicle in dead storage on an ***insured location.***

**(3)** watercraft:

    **(a)** owned by or rented to any ***insured*** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

    **(b)** owned by or rented to any ***insured*** if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

    **(c)** powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any ***insured.*** However, outboard motors of 50 or more total horsepower are covered for the policy period if:

        **i.** you acquired them prior to the policy inception, and:

            **(i)** declared them at policy inception; or

            **(ii)** you ask us in writing to insure them within 45 days after you become the owner;

        **ii.** you acquire them during the policy period, provided you ask us to insure them:

            **(i)** during the policy period in which you become the owner; or

            **(ii)** within 45 days after you become the owner;

*REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.*

whichever is greater, and pay any resulting additional premium from the date acquired.

    **(d)** designed as an air boat, air cushion, or similar type of craft; or

    **(e)** owned by any *insured* which is a *personal watercraft.*

Exclusion **e.(3)** does not apply while the *watercraft* is stored.

Exclusions **d.** and **e.** do not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

**f.** arising out of:

    **(1)** the entrustment by any *insured* to any person;

    **(2)** the supervision by any *insured* of any person;

    **(3)** any act, decision or omission by any *insured;*

    **(4)** any liability statutorily imposed on any **insured;** or

    **(5)** any liability assumed through an unwritten or written agreement by any **insured;**

with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section **II** of this policy.

**g.** caused directly or indirectly by war, including the following and any consequences of the following:

    **(1)** undeclared war, civil war, insurrection, rebellion, or revolution;

    **(2)** warlike act by a military force or military personnel; or

    **(3)** destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**h.** which results from the legal liability of any *insured* because of home care services provided to any person on a regular basis by or at the direction of:

    **(1)** any *insured;*

    **(2)** any employee of any *insured;*

    **(3)** any other person actually or apparently acting on behalf of any *insured.*

Regular basis means more than 20 hours per week. This exclusion does not apply to:

    **(1)** home care services provided to the relatives of any *insured;*

    **(2)** occasional or part-time home care services provided by any *insured* under 23 years of age.

**i.** arising out of physical or mental abuse, sexual molestation or sexual harassment;

**j.** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana, PCP and all narcotic drugs.

However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

**k.** arising out of any *insured's* participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 25 feet in overall length with or without auxiliary power.

**2.** **Coverage E — Personal Liability** does not apply to:

    **a.** Liability:

        **(1)** under any contract or agreement. However, this item **2.a.(1)** does not apply to written contracts:

            **(a)** that directly relate to the ownership, maintenance or use of an *insured location;* or

            **(b)** where the liability of others is assumed by the *insured* prior to an *occurrence;*

        unless excluded in **2.a.(1)** above or elsewhere in this policy;

**bodily injury** to any person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under:

(1) any workers compensation;

(2) nonoccupational disability; or

(3) occupational disease law;

e.  **bodily injury** or **property damage** for which any **insured** under this policy is also an **insured** under a nuclear energy liability policy or would be an **insured** but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f.  **bodily injury** to any **insured;**

g.  **bodily injury** or **property damage** arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of **pollutants** at any time. This includes any loss, cost or expense arising out of any:

(1) request, demand or order that any **insured** or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of **pollutants;**

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of **pollutants;**

3.  **Coverage F — Medical Payments to Others** does not apply to **bodily injury:**

a.  to a **residence employee** if the **bodily injury** occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured;**

b.  to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers compensation; nonoccupational disability; or occupational disease law;

c.  from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d.  to any person, other than a **residence employee** of any **insured,** regularly residing on any part of the **insured location.**

**LIABILITY LOSSES WE DO NOT COVER** does not apply to personal injury as defined under **Bodily Injury 2.b.(1)** and **2.b.(2).**

---

## ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

1.  **Claim Expenses.** We pay:

a.  expenses we incur and costs taxed against any **insured** in any suit we defend;

b.  premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E — Personal Liability.** We are not obligated to apply for or furnish any bond;

c.  reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit; and

*** REPRINTED FROM THE ARCHIVE; THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

    **(2)**   for *punitive damages* awarded against any *insured;*

    **(3)**   arising out of any illegal act committed by or at the direction of any *insured.*

**b.**   *property damage* to property owned by any *insured;*

**c.**   *property damage* to property rented to, occupied or used by or in the care of any *insured.* This

REPRINTED FROM THE ARCHIVE: THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

    **d.** interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**2.** **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *insured*.

**3.** **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $500 per *occurrence* for *property damage* to property of others caused by any *insured.*

We will not pay for *property damage:*

    **a.** if insurance is otherwise provided in this policy;

    **b.** caused intentionally by any *insured* who is 13 years of age or older;

    **c.** to property owned by or rented to any *insured,* a tenant of any *insured,* or a resident in your household; or

    **d.** arising out of:

        **(1)** *business* pursuits;

        **(2)** any act or omission in connection with a premises owned, rented or controlled by any *insured,* other than the *insured location;* or

        **(3)** the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles.

        This item **3.d.(3)** does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured.*

**4.** **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $1,000 for:

    **a.** the legal obligation of any *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

    **b.** loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

    **c.** loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

    **d.** loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of *business* pursuits or dishonesty of any insured.

Defense:

    **a.** We may make any investigation and settle any claim or suit that we decide is appropriate.

    **b.** If a suit is brought against any *insured* for liability under the Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

    **c.** We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

**5.** **Statutorily Imposed Vicarious Parental Liability.**

We will pay the lesser of:

    **a.** the statutorily imposed limit; or

    **b.** $3,000;

for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

This coverage is excess over any other valid and collectible insurance.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

## SECTION II — LIABILITY CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage **E** for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage **E** stated in the Declarations. This limit is the same regardless of the number of *insureds,* claims made or persons injured.

   Our total liability under Coverage **F** for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage **F** stated in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

3. **Your Duties After Loss.** In case of an accident or *occurrence,* the *insured* shall perform the following duties that apply:

   a.  give written notice to us or our agent as soon as practicable, which sets forth:

       (1)  the identity of the policy and *insured;*

       (2)  reasonably available information on the time, place and circumstances of the accident or *occurrence;*

       (3)  names and addresses of any claimants and witnesses; and

       (4)  in case of loss under the Credit Card or Fund Transfer Card Coverage also notify the Credit Card or Fund Transfer Card Company;

   b.  promptly forward to us every notice, demand, summons or other process relating to the accident or *occurrence;*

   c.  at our request, help us:

       (1)  to make a settlement;

       (2)  to enforce any right of contribution or indemnity against any person or organization who may be liable to any *insured;*

       (3)  with the conduct of suits and attend hearings and trials;

       (4)  to secure and give evidence and obtain the attendance of witnesses;

   d.  under the **Additional Liability Coverages** — Damage to the Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the *insured's* control;

   e.  submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages,** Credit Card, Fund Transfer Card, or Forgery and Counterfeit Money Coverage, stating the amount and cause of loss;

   f.  the *insured* shall not, except at the *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury.*

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone acting for the injured person will:

   a.  give us written proof of claim, under oath if required, as soon as practical;

   b.  authorize us to obtain copies of medical reports and records.

   The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

5. **Payment of Claim — Coverage F — Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have any right to join us as a party to any action against any insured. Further, no action with respect to Coverage **E** shall be brought against us until the obligation of the *insured* has been determined by final judgment or agreement signed by us.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

7. **Bankruptcy of an *Insured*.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

8. **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

1. **Policy Period and Changes.**

   a. The effective time of this policy is 12:01 A.M. at the *residence premises.* This policy applies only to loss under Section **I,** or *bodily injury* or *property damage* under Section **II,** which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

   b. **Changes:**

      (1) Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

      (2) This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

2. **Concealment or Fraud.** This policy will be void if any *insured* has, before or after a loss:

   a. intentionally concealed or misrepresented any material fact or circumstance; or

   b. made false statements or engaged in fraudulent conduct relating to this insurance; with the intent to deceive.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

   This liberalization clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

      (1) When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 31 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 31 days before the date cancellation takes effect.

   c. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

5. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 31 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

6. **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

7. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

   Subrogation does not apply under Section **II** to **Coverage F — Medical Payments to Others** or **Additional Liability Coverages,** Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

   b. *insured* includes:

      (1) any member of the household who is an *insured* at the time of your death, but only while a resident of the *residence premises;* and

      (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## POLICY DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household, and "we," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"Actual cash value"**

   a. When the damage to property is economically repairable, **actual cash value** means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

   b. When the loss or damage to property creates a total loss, **actual cash value** means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

   c. Otherwise, **actual cash value** shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

2. **"Bodily injury"** means:

   a. bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

      **Bodily injury** does not include any communicable disease transmitted by any *insured* to any other person.

   b. *personal injury:*

      (1) arising out of one or more of the following offenses:

         (a) false arrest, detention or imprisonment, or malicious prosecution;

         (b) libel, slander or defamation of character; or

         (c) invasion of privacy, wrongful eviction or wrongful entry.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

(2) coverage does not include:

    (a) liability assumed by any *insured* under any contract or agreement except any indemnity obligation assumed by the *insured* under a written contract directly relating to the ownership, maintenance or use of the *insured location;*

    (b) injury arising out of any illegal act committed by or at the direction of any *insured;*

    (c) injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any *insured;*

    (d) injury arising out of the *business* pursuits of any *insured.* This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

    (e) injury arising out of civic or public activities performed for pay by any *insured;* or

    (f) *punitive damages* awarded against any *insured.*

3. *"Business"* includes trade, profession or occupation.

4. *"Earthquake"* means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

5. *"Insured"* means you and the following residents of your household:

    a. your relatives;

    b. any other person under the age of 21 who is in the care of any person named above.

    Under **Section II — Liability Coverage,** *"insured"* also means:

    c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** A person or organization using or having custody of these animals or watercraft in the course of any *business,* or without permission of the owner is not an *insured;*

    d. with respect to any vehicle to which this policy applies:

        (1) any person while engaged in your employment or the employment of any person included in **a.** or **b.;** or

        (2) any other person using the vehicle on an *insured location* with any *insured's* permission.

6. *"Insured location"* means:

    a. the *residence premises;*

    b. that part of any other premises, other structures and grounds, used by you as a residence and which is shown in the Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

    c. any premises used by you in connection with the premises included in **a.** or **b.;**

    d. any part of a premises not owned by any *insured* but where any *insured* is temporarily residing;

    e. vacant land owned by or rented to any *insured* other than farmland;

    f. land owned by or rented to any *insured* on which a one, two, three or four family dwelling is being constructed as a residence for any *insured;*

    g. individual or family cemetery plots or burial vaults of any *insured;* or

    h. any part of a premises occasionally rented to any *insured* for other than *business* purposes.

7. *"Occurrence"* means an accident, including exposure to conditions which results in:

    a. *bodily injury;* or

    b. *property damage;*

    during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

8. *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

9. *"Pollutants"* means:

   a. liquid fuels;

   b. lead or any materials containing lead;

   c. asbestos or any materials containing asbestos;

   d. radon;

   e. formaldehyde or any materials containing formaldehyde;

   f. electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

   g. carbon monoxide; or

   h. any other irritant or contaminant, including waste, vapor, fumes, acids, alkalis, chemicals or radioactive substances.

10. *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

    *Property damage* does not include loss caused by any communicable disease transmitted by any *insured.*

11. *"Punitive damages"* means damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for *bodily injury* or *property damage.*

12. *"Replacement cost"*

    a. In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

    b. In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, *replacement cost* shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

13. *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises,* including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured.*

14. *"Residence premises"* means:

    a. the one or two family dwelling, other structures and grounds; or

    b. that part of any other building;

    where you reside and which is shown in the Declarations.

15. *"Salvage"* means property having value and included in a covered loss.

REPRINTED FROM THE ARCHIVE — THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

# SPECIAL PROVISIONS — FUNGI, WET OR DRY ROT, OR BACTERIA

## SECTION I — PROPERTY COVERAGES

**PERSONAL PROPERTY LOSSES WE DO NOT COVER**

The following is added:

11. ***Fungi*, Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria.

    This exclusion does not apply:

    a. when *fungi,* wet or dry rot, or bacteria ensues from a covered fire or lightning loss; or

    b. to the extent coverage is provided for under **Additional Coverage 9. *Fungi*, Wet or Dry Rot, or Bacteria** under **Section I — Property Coverages**.

**ADDITIONAL PROPERTY COVERAGES**

The following is added:

9. ***Fungi*, Wet or Dry Rot, or Bacteria.** We will pay up to $10,000 for:

    a. the direct physical loss to covered property caused by *fungi,* wet or dry rot, or bacteria;

    b. the cost to remove *fungi,* wet or dry rot, or bacteria from covered property;

    c. the cost to tear out and replace any covered property as needed to gain access to the *fungi,* wet or dry rot, or bacteria;

    d. the cost of any testing of air or property to confirm the absence, presence or level of *fungi,* wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is a presence of *fungi,* wet or dry rot, or bacteria; and

    e. **Additional Living Expenses** or **Fair Rental Value** loss covered under **Coverage D — Loss of Use**.

    This coverage only applies when such loss or costs:

    f. are a result of a loss we cover that occurs during the policy period;

    g. are not excluded under **Personal Property Losses We Do Not Cover**; and

    h. only if all reasonable means are used to save and preserve the property from further damage.

    This coverage does not apply to loss to trees, shrubs or other plants.

    The $10,000 limit of liability is the most we will pay for the total of all loss or costs for Coverages C and D, and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

## DEFINITIONS

The following is added:

16. ***"Fungi"*** means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or byproducts produced, released by or arising out of *fungi,* including growth, proliferation or spread of *fungi* or the current or past presence of *fungi.* However, this definition does not include any *fungi* intended by the *insured* for consumption.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

# SPECIAL PROVISIONS — COLLAPSE

## SECTION I — PROPERTY COVERAGES

**PERSONAL PROPERTY LOSSES WE COVER**

Item **12. Collapse** is deleted.

**ADDITIONAL PROPERTY COVERAGES**

The following is added:

**10. Collapse.**

    **a.** We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

        **(1)** The perils named under **Personal Property Losses We Cover**, with exception of item **12. Collapse** which is previously deleted in this endorsement;

        **(2)** Decay that is hidden from view, unless the presence of such decay is known to an *insured* prior to collapse;

        **(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an *insured* prior to collapse;

        **(4)** Weight of contents, equipment, animals or people;

        **(5)** Weight of rain which collects on a roof; or

        **(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    **b.** Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **a.(2)** through **(6)** above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

    **c.** With respect to this coverage:

        **(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

        **(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

        **(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

        **(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

This coverage does not increase the limit of liability that applies to the damaged covered property.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

# SPECIAL PROVISIONS — WASHINGTON

## SECTION I — PROPERTY COVERAGES

### PERSONAL PROPERTY LOSSES WE DO NOT COVER

The opening paragraph of this section is deleted and replaced by the following:

We do not cover loss caused directly or indirectly by any of the following excluded perils. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

The following is added to item **7. Intentional Loss**:

This exclusion does not apply to an otherwise-covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy providing:

a. the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

b. the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss.

For purposes of this provision, "domestic abuse" means:

a. physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

b. sexual assault of one family or household member by another;

c. stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member; or

d. intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

The following is added:

11. An act or acts of *terrorism*, vandalism, or malicious mischief by any person, group, organization or governmental body that contributes to, or acts in any way with the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants and contaminants*.

    This exclusion does not apply to the extent coverage is provided under **Additional Property Coverages, 11. Terrorism, Vandalism or Malicious Mischief — Pollution or Contamination**.

### ADDITIONAL PROPERTY COVERAGES

The following is added:

11. *Terrorism*, Vandalism or Malicious Mischief — Pollution and Contamination.

    We will pay up to $10,000 for any loss or damage otherwise excluded under **Building Property Losses We Do Not Cover**, item **20.** for:

    a. the direct physical loss to the property described in Coverages B and C;

    b. the cost to remove *pollutants and contaminants;*

    c. the cost of any testing to confirm the absence presence or level of *pollutants or contaminants* whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *pollutants and contaminants;* and

    d. **Additional Living Expenses** loss covered under **Coverage D — Loss of Use**.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

The $10,000 limit is the most we will pay for the total of all loss under **11.a.**, **b.**, **c.** and **d.**, above. This coverage does not apply to any fee assessment or expense of any governmental authority.

This coverage does not increase the limit of liability that applies to the damaged covered property.

## SECTION I — PROPERTY CONDITIONS

Item **5. Loss Settlement** is deleted and replaced by the following:

**5.   Loss Settlement**

**a.   Full Value.** Personal property under Coverage C or Option E — Scheduled Personal Property, not otherwise described under **Loss Settlement**, **5.b.**, *Actual Cash Value,* below, and awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings, at *replacement cost* at the time of loss subject to the following:

   **(1)**   We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

   **(a)**   the limit of liability of this policy applicable to the damaged, destroyed or stole property;

   **(b)**   the *replacement cost* of the property or any part;

   **(c)**   the full amount actually and necessarily spent by the *insured* in repairing or replacing the property or any part;

   **(d)**   the direct financial loss you incur; or

   **(e)**   our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

   **(2)**   We will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

   **(3)**   You may make a claim for loss on an *actual cash value* basis and then make a claim, within 180 days after loss, for any additional liability under *replacement cost,* after you have repaired or replaced the property.

This **Loss Settlement**, **5.a.**, Full Value, is an optional coverage and applicable only if purchased and shown in the Declarations.

**b.   Actual Cash Value**

   The following property:

   **(1)**   antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

   **(2)**   memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value;

   **(3)**   personal property not maintained in good or workable condition;

   **(4)**   personal property that is outdated or obsolete and is stored or not being used;

   **(5)**   property not owned by any *insured;* and

   **(6)**   motorized land vehicles or earth moving or excavating equipment used to service the *residence premises;* and

   if Full Value, **5.a.**, is not purchased and shown in the Declarations, then;

   **(7)**   all other personal property; and

   **(8)**   awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

Item **8. Suit Against Us**, is deleted and replaced by the following:

8.   **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

---

## SECTION II — LIABILITY COVERAGES

**LIABILITY LOSSES WE DO NOT COVER**

Item **1.a.** is deleted and replaced by:

   a.   which:

   (1)   is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured;* or

   (2)   results from violation of:

   (a)   criminal law; or

   (b)   local or municipal ordinance

   committed by, or with the knowledge or consent of any *insured*.

This exclusion applies even if:

   (3)   such *insured* lacks the mental capacity to form intent;

   (4)   such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or

   (5)   such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended.

This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

Item **2.a.(3)** is deleted.

Item **2.g.** is deleted and replaced by the following:

   g.   *bodily injury* or *property damage* arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants or contaminants* at any time. This includes any loss, cost or expense arising out of any:

   (1)   request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants or contaminants;*

   (2)   claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants or contaminants;*

---

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

The following is added to item **2. Concealment or Fraud:**

This exclusion does not apply to an otherwise-covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy, providing:

   a.   the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

   b.   the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss.

For purposes of this provision, "domestic abuse" means:

    **a.** physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

    **b.** sexual assault of one family or household member by another;

    **c.** stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member; or

    **d.** intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

Item **4. Cancellation** is deleted and replaced by the following:

**4. Cancellation.**

    **a.** You may cancel this policy at any time by notifying us or the insurance producer of the date cancellation is to take effect in one of the following ways:

        **(1)** Returning this policy to us;

        **(2)** Written notice by mail, facsimile, or email; or

        **(3)** Verbal notice.

    If the date of cancellation is not specified, cancellation shall take effect upon our receipt of such notice.

    **b.** We may cancel this policy only for the reasons stated below by notifying you and, if applicable, any mortgagee, pledgee or other person shown by the policy to have an interest in any loss which may be covered by this policy, in writing of the date cancellation takes effect. This cancellation notice, together with our reason for cancellation, may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

        **(1)** When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

        **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 45 days before the date cancellation takes effect.

        **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 45 days before the date cancellation takes effect.

    **c.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium is computed on a pro rata basis when cancellation is requested by us or by you.

Item **5. Non-Renewal** is deleted and replaced by the following:

**5. Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, including our reason for refusing to renew, of at least 45 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

## DEFINITIONS

The opening paragraph is deleted and replaced by the following:

Throughout this policy, "you" and "your" refer to the "named insured" shown in your Policy Declarations and, if a resident of the same household, the spouse, civil partner by civil union licensed and certified by the state, or the *domestic partner*.

"We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations.

CHO-6104/WAEP R1 2/15

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

Item **2.b.(2)(b)** is deleted and replaced by the following:

    **(b)** injury resulting from violation of:

        **i.** criminal law; or

        **ii.** local or municipal ordinance

        committed by, or with the knowledge or consent of any *insured*.

The following are added:

17. ***"Pollutants and contaminants"*** means any of the following:

    **a.** liquid fuels;

    **b.** lead or any materials containing lead;

    **c.** asbestos or any materials containing asbestos;

    **d.** radon;

    **e.** formaldehyde or any materials containing formaldehyde;

    **f.** electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

    **g.** carbon monoxide;

    **h.** pathogenic or poisonous biological materials;

    **i.** acids, alkalis or chemicals;

    **j.** radioactive substances; or

    **k.** any other irritant or contaminant including waste, vapor, fumes or odors.

18. ***"Terrorism"*** means the use or threat of force or violence that is dangerous to human life or property that is committed by an individual or individuals and that appears to be a part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion.

The following is added:

***"Domestic partner"*** means a person living as a continuing partner with you and:

    **a.** is at least 18 years of age and competent to contract;

    **b.** is not a relative; and

    **c.** shares with you the responsibility for each other's welfare, evidence of which includes:

        **(1)** the sharing in domestic responsibilities for the maintenance of the household; or

        **(2)** having joint financial obligations, resources or assets; or

        **(3)** one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

***Domestic partner*** does not include more than one person, a roommate whether sharing expenses equally or not or one who pays rent to the named *insured*.

---

## MANDATORY COVERAGE

The only coverage for loss caused in any way by a volcano is provided in this section.

We insure for direct loss to property described in **Section I — Property Coverages** caused by:

**Volcanic Action**, meaning only direct loss to a building or property contained in a building resulting from the eruption of a volcano when the direct loss is caused by:

1. volcanic explosion or airborne shock waves;

2. initial fallout of ash, dust or particulate matter; or

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

**3.** lava flow.

**Cost of Removal**

We will pay for the removal of only the ash, dust or particulate matter which has caused direct loss during the initial fallout to a building or property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered as one volcanic eruption.

**Special Exclusion**

As to loss caused by Volcanic Action, **Personal Property Losses We Do Not Cover**, Item **1. Earth Movement**, is deleted and replaced by the following:

**1.** **Earth Movement**, meaning:

   **a.** earthquake; landslide; mudflow; earth sinking, rising, shifting or contracting, all whether combined with water or not; or

   **b.** mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces or flood or tidal wave; gaseous emission or acid rain;

all whether caused by, resulting from, contributed to or aggravated by Volcanic Action.

If direct loss by fire or breakage of glass or safety glazing material which is part of a building, storm door or storm window ensues, then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.


All other provisions of this policy apply.

--- REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

# OPTION E — SCHEDULED PERSONAL PROPERTY

For an additional premium, we agree to cover the classes of personal property indicated by an amount of insurance on the Scheduled Personal Property Endorsement. No deductible shall apply to a loss covered under this option.

1. **Scheduled Personal Property** as used in this endorsement includes only the following:

   a. **Jewelry,** as scheduled.

   b. **Furs** and garments trimmed with fur or consisting principally of fur, as scheduled.

   c. **Cameras,** projection machines, films and related articles of equipment, as scheduled.

   d. **Musical instruments** and related articles of equipment, as scheduled.

   You agree not to perform with these instruments for pay.

   e. **Silverware,** silver-plated ware, goldware, gold-plated ware and pewterware, as scheduled, but excluding pens, pencils, flasks, smoking implements or jewelry.

   f. **Guns,** as scheduled.

   g. **Fine Arts,** as scheduled.

   You agree that the covered property will be packed and unpacked by competent packers.

   h. **Postage Stamps,** including due, envelope, official, revenue, match and medicine stamps, covers, locals, reprints, essays, proofs and other philatelic property, including their books, pages and mountings, owned by or in the custody or control of the *insured.*

   i. **Rare and Current Coins,** including medals, paper money, bank notes, tokens of money and other numismatic property, including coin albums, containers, frames, cards and display cabinets in use with such collection, owned by or in the custody or control of the *insured.*

   j. **Cellular Phones and Other Media Communications Equipment,** as scheduled.

   k. **Electronic Equipment and Media.**

   l. **Property Not Otherwise Classified,** as scheduled.

2. **NEWLY ACQUIRED PROPERTY**

   a. With respect to jewelry, furs, cameras, musical instruments, cellular phones and other electronic equipment and media, we cover newly acquired property of a class of property already insured for an amount not to exceed 25% of the amount of insurance for that class of property or $10,000, whichever is less; provided the *insured* reports this newly acquired property to us within 30 days of acquisition and pays the additional premium from the date acquired.

   b. We cover other objects of art acquired during the policy period for their *actual cash value* but no more than 25% of the amount of insurance for fine arts scheduled, provided the *insured* reports these objects to us within 90 days of acquisition and pays the additional premium from the date acquired.

3. **LOSSES WE COVER**

   We cover accidental direct physical loss to the property described, except as limited or excluded.

4. **LOSSES WE DO NOT COVER**

   a. Wear and tear, gradual deterioration, insects, vermin or inherent vice.

   b. Loss caused directly or indirectly by War, including the following and any consequence of any of the following:

      (1) undeclared war, civil war, insurrection, rebellion, or revolution;

      (2) warlike act by a military force or military personnel; or

      (3) destruction or seizure or use for a military purpose.

      Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

   c. **Nuclear Hazard,** to the extent set forth in **Nuclear Hazard, Section I — Building Property** or **Personal Property Losses We Do Not Cover.**

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

**d.** *Terrorism,* to the extent set forth in **Building Property** or **Personal Property Losses We Do Not Cover.**

**e.** If Fine Arts are covered:

    **(1)** Damage caused by any repairing, restoration or retouching process;

    **(2)** Breakage of art glass windows, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles. We cover loss by breakage if caused by fire, lightning, aircraft, windstorm, malicious damage, theft, explosion, earthquake, flood or collision, derailment or overturn of conveyance.

    **(3)** Loss to property on exhibition at fair grounds or premises of national or international expositions.

**f.** If the classes of property, Postage Stamps or Rare and Current Coins, Trading Cards or Comic Books are covered:

    **(1)** Fading, creasing, denting, scratching, tearing, thinning, transfer of colors, inherent defect, dampness, extremes of temperature, gradual depreciation, or any damage from handling or being worked upon.

    **(2)** Disappearance of individual stamps, coins or other articles unless the item is described and scheduled with a specific amount of insurance, or if the item is mounted in a volume and the page to which it is attached is also lost.

    **(3)** Loss to property in the custody of transportation companies; nor shipments by mail other than registered mail.

    **(4)** Loss to property which is not an actual part of a stamp or coin collection.

**g.** Loss to guns caused by internal explosion, rust, fouling, marring or scratching.

**h.** Loss to sports or golfer's equipment or guns:

    **(1)** caused by any process of refinishing, renovating or repairing; dampness of atmosphere and/or extremes of temperature; inherent defect or faulty manufacture;

    **(2)** caused by breakage, marring, scratching, tearing or denting, unless caused by fire, theft or accidents to conveyances.

**i.** If golfer's equipment is covered, golf balls are covered only for loss by fire or burglary, provided, if burglary, there are visible marks of forcible entry into the building, room or locker.

**j.** Loss to Electronic Equipment and Media:

    **(1)** caused by mechanical or machinery breakdown or failure;

    **(2)** caused by any change in electric power supply if the change originates outside of the *residence premises* except by lightning;

    **(3)** caused by short circuit or other electrical or magnetic injury, disturbance, or erasure of electronic data;

    **(4)** caused by design, specifications, workmanship, programming, manufacture, repair, materials used in repair, refurbishing, maintenance or the resulting failure to function; or

    unless fire or explosion ensues and then only for loss to the insured property caused by the ensuing fire or explosion;

    **(5)** caused by delay, loss of market, loss of use or interruption of business; or consequential loss of any nature.

**4.  TERRITORIAL LIMITS**

We cover the property described while it is anywhere in the world except Fine Arts are covered only while within the limits of the continental United States, the state of Hawaii, and Canada.

**5.  CONDITIONS**

    **a.  Loss Clause:** The amount of insurance under this option shall not be reduced except for a total loss of a scheduled article. We will refund the unearned premium applicable to such article after the loss or you may apply it to the premium due for the replacement of the scheduled article.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

b.  **Loss Settlement:** Covered property losses are settled as follows:

    **(1)  Fine Arts** — We will pay the amount shown for each scheduled article which is agreed to be the value of the article.

        In case of loss to a pair or set, we agree to pay you the full amount of the set as shown in the schedule and you agree to surrender the remaining article or articles of the set to us.

    **(2)  Postage Stamps, Rare** and **Current Coins, Trading Cards** or **Comic Books** — In case of loss to any scheduled item, the amount to be paid will be determined in accordance with paragraph 5.b.(3) Other Property.

        When coins or stamps are covered on a blanket basis, we shall pay the cash market value at time of loss but not more than $250 for any one stamp, coin, card, book or individual article or any one pair, strip, block, series sheet, cover or frame.

        We shall not pay a greater proportion of any loss on blanket property than the amount insured on blanket property bears to its cash market value at time of loss.

    **(3)  Other Property** — The value of the property insured is not agreed upon but shall be ascertained at the time of loss or damage.

        **(a)**  We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

            **i.**  the limit of liability of this policy applicable to the damaged, destroyed or stolen property;

            **ii.**  the *replacement cost* of the property or any part;

            **iii.**  the full amount actually and necessarily spent by the *insured* in repairing or replacing the property or any part;

            **iv.**  the direct financial loss you incur; or

            **v.**  our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

        **(b)**  We will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

        **(c)**  You may make a claim for loss on an *actual cash value* basis and then make a claim, within 180 days after loss, for any additional liability under *replacement cost,* after you have repaired or replaced the property.

c.  **Pair, Set or Parts Other than Fine Arts:**

    **(1)  Loss to a Pair or Set** — In case of a loss to a pair or set we may elect to:

        **(a)**  repair or replace any part to restore the pair or set to its value before the loss; or

        **(b)**  pay the difference between the *replacement cost* of the property before and after the loss.

    **(2)  Parts** — In case of a loss to any part of covered property, consisting of several parts when complete, we shall pay for the value of the part lost or damaged.

All other provisions of this policy apply.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

## OPTION FFF — LOSS ASSESSMENT COVERAGE

For an additional premium, we agree to pay any loss assessment charged during the policy period against you by the association of property owners up to the limit of liability stated in the Declarations, when the assessment is made as a result of:

1. each direct loss to property, caused by a peril that would be covered under **Section I — Property Coverages** of this policy;

   **SPECIAL EXCLUSION:** There is no coverage for any loss assessment resulting from the peril of **earthquake.** However, loss assessment for ensuing direct loss by fire, explosion or theft is covered.

2. each *occurrence* to which **Section II — Liability Coverages** of this policy would apply;

3. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

   a. the director, officer or trustee is elected by the members of the association of property owners; and

   b. the director, officer or trustee serves without deriving any income from the exercise of his/her duties, which are solely on behalf of the association of property owners.

### SECTION II — LIABILITY COVERAGES

For purposes of this option, item **2.a.(1)** under **Liability Losses We Do Not Cover** is deleted.

### DEDUCTIBLE

We will pay only that part of your assessment per unit for property insured under **Section I** that exceeds $500. No other deductible applies to this coverage. If our liability for a loss results from **Section I** and coverage under this option, only the larger deductible will apply.

All other provisions of this policy apply.

CHO-6240/EP 8/06
G1

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

## OPTION YY — WATER BACK-UP AND SUMP OVERFLOW

**SECTION I — BUILDING PROPERTY LOSSES WE COVER and/or PERSONAL PROPERTY LOSSES WE COVER**

For an additional premium, we insure, up to the limits shown in the Declarations, for direct physical loss, not caused by the negligence of any *insured* to property covered under Section I caused by:

1. water which backs up through or overflows from a sewer, drain, sump, sump pump or any system on the *residence premises* designated to remove subsurface water from the foundation area.

**BUILDING PROPERTY LOSSES WE DO NOT COVER and/or PERSONAL PROPERTY LOSSES WE DO NOT COVER**

We do not cover loss caused directly or indirectly by:

**Water Damage,** meaning:

a. flood, surface water, waves, tidal water, tsunami, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

b. water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

This coverage is subject to the deductible stated in the Declarations.

All other provisions of this policy apply.

CHO-6248/EP 6/98

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS.

## OPTION KK — SPECIAL PERSONAL PROPERTY COVERAGE

For an additional premium under Section I:

Coverage C — Personal Property is amended as follows:

**PERSONAL PROPERTY WE COVER**

**COVERAGE C — PERSONAL PROPERTY**

The following **Special Limits of Liability** are replaced by:

**f.**  $1,500 on any one article, but not more than $3,000 in the aggregate for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

**g.**  $3,000 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

Silverware, goldware and pewterware include:

**(1)**  plateware, flatware, hollowware, tea sets, trays, trophies and the like;

**(2)**  other utilitarian items made of or including silver and gold; and

**(3)**  all items of pewterware.

**Section I — Personal Property Losses We Cover** and **Personal Property Losses We Do Not Cover** are replaced by the following:

**PERSONAL PROPERTY LOSSES WE COVER**

We insure for accidental direct physical loss to property described in Coverage C, except as excluded or excepted under **Personal Property Losses We Do Not Cover.**

**PERSONAL PROPERTY LOSSES WE DO NOT COVER**

We do not cover loss caused directly or indirectly by any of the following excluded perils:

**1.**  **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to **earthquake,** landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow.

We do cover direct loss by fire, explosion or theft.

**2.**  **Water Damage,** meaning:

**a.**  flood, surface water, waves, tidal water, tsunami, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.**  water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

**c.**  water which backs up through sewers or drains originating outside of the **residence premises'** plumbing system; or

**d.**  water which backs up, overflows or discharges for any reason from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**3.**  **Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the **residence premises.** If a loss we cover ensues on the **residence premises,** we will pay only for the ensuing loss.

**4.**  **Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

--- REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

5. Loss caused directly or indirectly by War, including the following and any consequence of the following:

   a. undeclared war, civil war, insurrection, rebellion, or revolution;

   b. warlike act by a military force or military personnel; or

   c. destruction or seizure or use for a military purpose.

   Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

6. **Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I; except direct loss by fire resulting from the nuclear hazard is covered.

7. **Intentional Loss,** meaning any loss arising out of any act committed:

   a. by or at the direction of any *insured;*

   b. with the intent to cause a loss.

   This exclusion does not apply to an otherwise-covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy, providing:

   a. the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

   b. the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

   Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss, less payments made pursuant to item **12.** of Section I — Property Conditions.

   For purposes of this provision, "domestic abuse" means:

   a. physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

   b. sexual assault of one family or household member by another;

   c. stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member; or

   d. intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

8. Acts or Decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

9. Weather that contributes in any way with a cause or event excluded in this section to produce a loss. However, any ensuing loss not excluded is covered.

10. **Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

    a. planning, zoning, development, surveying, siting;

    b. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    c. materials used in repair, construction, renovation or remodeling; or

    d. maintenance;

    of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

11. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain the system or appliances of water.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

12. Freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

13. Theft in, to or from a dwelling or condominium unit under construction, or of materials and supplies for use in the construction until the dwelling or condominium unit is completed and occupied.

14. Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

15. Continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years.

16. Loss caused by:
    a. wear and tear, marring, scratching, deterioration;
    b. inherent defect, mechanical breakdown;
    c. smog, rust or other corrosion, or electrolysis;
    d. smoke from agricultural smudging or industrial operations;
    e. the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants* at any time;
    f. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceiling, swimming pools, hot tubs, spas or chimneys;
    g. birds, insects or animals, domestic or not, except for breakage of glass.
    h. pressure from or presence of plant roots.

    We do not cover loss to the system or appliance from which this water escaped.

However, we do insure for any resulting loss from items **11.** through **16.** unless the resulting loss is itself excluded under **Personal Property Losses We Do Not Cover** in this endorsement. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the dwelling necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

17. *Fungi,* **Wet or Dry rot, or Bacteria** meaning growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for in the **Additional Coverage** *Fungi,* **Wet or Dry Rot or Bacteria** under **Section I — Property Coverages.**

18. **Collapse,** except as provided in item **Collapse** under **Section I — Property Coverages, Additional Coverages.** However, we do insure for any resulting loss unless the resulting loss is itself a loss not insured under this section.

19. An act or acts of *terrorism,* vandalism, or malicious mischief by any person, group, organization or governmental body that contributes to, or acts in any way with the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants and contaminants.*

    The exclusion does not apply to the extent coverage is provided under **Additional Property Coverages, 13. Terrorism, Vandalism or Malicious Mischief — Pollution or Contamination.**

20. Breakage of eyeglasses, glassware, statuary, sculptures, objects made from marble, porcelain, ceramics, china and crystal. However, jewelry, watches, bronzes, cameras and photographic lenses are covered.

    There is coverage for breakage of personal property caused by or resulting from:
    a. fire, lightning, windstorm, hail;
    b. smoke, other than smoke from agricultural smudging or industrial operations;
    c. explosion, riot, civil commotion;
    d. aircraft, vehicles, vandalism and malicious mischief not otherwise excluded, or volcanic eruption;
    e. collapse of a building or any part of a building;
    f. water not otherwise excluded;
    g. theft or attempted theft; or

--- REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ---

    **h.**    sudden and accidental tearing apart, cracking, burning or bulging of:

        **(1)**   a steam or hot water heating system;

        **(2)**   an air conditioning or automatic fire protective sprinkler system; or

        **(3)**   an appliance for heating water.

**21.** Dampness of atmosphere.

**22.** Refinishing, renovating or repairing property other than watches, jewelry and furs.

**23.** Sinking, swamping, stranding, or collision, other than collision with a land vehicle, of watercraft, including their trailers, furnishings, equipment and outboard motors.

**24.** Destruction, confiscation or seizure by order of any government or public authority.

**Section I — Additional Property Coverages.** The following is added:

**Household Products.** This coverage covers direct physical loss to the property described in Coverage C arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products on the *residence premises.* Household products include items currently in use or in your possession at the *residence premises* in normal household quantities such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

We will pay up to 5% of the Coverage C limit of liability stated in the Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to :

    **a.**    any fee, assessment or expense of any governmental authority;

    **b.**    loss arising out of household products possessed or used:

        **(1)**   for business purposes;

        **(2)**   in violation of criminal law, or local, or municipal ordinance;

        **(3)**   by contractors; or

        **(4)**   on driveways or walkways.

Item **16.e.** under **Personal Property Losses We Do Not Cover** in this endorsement does not apply to this Additional Property Coverage.

All other provisions of this policy apply.

\*\* REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

# OPTION ID — IDENTITY RECOVERY COVERAGE

**ID THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT**

Service and coverage under this endorsement applies to any *insured* as defined in this policy.

**DEFINITIONS**

The following definitions are added with respect to this endorsement only:

1. **"ID Recovery Case Manager"** means a person assigned by us to help an *insured* to recover control over his or her personal identity (ID). This help may include contacting authorities, credit bureaus, creditors and businesses. Such contacts will take place with the permission and cooperation of the *insured*.

2. **"ID Theft"** means the fraudulent use of the Social Security number or other method of identifying an *insured*. This includes the fraudulent use of the personal identity of an insured to establish credit accounts, secure loans, enter into contracts or commit crimes.

   *ID theft* does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

   *ID theft* does not include the unauthorized use of a valid credit card, credit account or bank account. However, *ID theft* does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

3. **"ID Theft Expenses"** means any of the following when they are reasonable and necessary expenses that are incurred in the United States or Canada as a direct result of an ID theft.

   a. Costs for re-filing applications for loans, grants or other credit instruments.

   b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage.

   c. Costs for up to 12 credit reports from established credit bureaus dated within 12 months after discovery of the *ID theft*.

   d. Fees and expenses for an attorney approved by us for the following.

      (1) The defense of any civil suit brought against an *insured* by a creditor or entity acting on behalf of a creditor for non-payment of goods or services or default on a loan.

      (2) The removal of any civil judgment wrongfully entered against an *insured*.

   e. Actual lost wages of the *insured* for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

   f. Actual costs for supervision of children or elderly or infirm relatives or dependants of the *insured* during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the *insured*.

The following Additional Coverage is added under **Section I:**

**IDENTITY RECOVERY COVERAGE**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met.

1. There has been an *ID theft* involving the personal identity of an *insured* under this policy; and

2. Such *ID theft* is first discovered by the *insured* during the policy period for which this Identity Recovery coverage is applicable; and

3. Such ID *theft* is reported to us within 60 days after it is first discovered by you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CHO-6389/EP 8/06                                                                 Page 1 of 3

... REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ...

If all three of the requirements listed above have been met, then we will provide the following to the *insured:*

1. **Case Management Service**

   Services of an *ID recovery case manager* as needed to respond to the *ID theft.*

2. **Expense Reimbursement**

   Reimbursement of necessary and reasonable *ID theft expenses* incurred as a direct result of the *ID theft.*

This coverage is additional insurance.

## LIMITS

Case Management Service is available as needed for any one *ID theft* for up to 12 months in a row from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $25,000 annual aggregate per *insured.* This limit is the most we will pay for the total of all loss or expense arising out of all *ID thefts* to any one *insured* which are first discovered by the *insured* during the present annual policy period. This limit applies regardless of the number of claims during that period.

An *ID theft* may be first discovered by the *insured* in one policy period and continue into other policy periods. If so, all loss and expense arising from such *ID theft* will be subject to the aggregate limit applicable to the policy period when the *ID theft* was first discovered by the *insured.*

Coverage for legal costs is found under item **d.** of the definition of *ID theft* expenses. Such legal costs are part of, and not in addition to, the Expense Reimbursement coverage limit.

Item **e.** Lost Wages and item **f.** Child and Elder Care Expenses of the definition of *ID theft expenses* are jointly subject to a sub-limit of $250 per day, not to exceed $5,000 in total. This sub-limit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the *ID theft* by the *insured.*

## DEDUCTIBLE

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible as shown on your Declarations page. You shall be responsible for only one deductible under this endorsement during any one policy period.

## EXCLUSIONS

The following additional exclusions apply to this coverage. These exclusions apply to both Case Management Service and Expense Reimbursement.

We do not cover loss or expense arising from any of the following.

1. The theft of a professional or business identity.

2. Any fraudulent, dishonest or criminal act by an *insured.* This includes any such act by a person aiding or abetting an *insured.* This also includes any such act by an authorized representative of an *insured.* In all these cases, it does not matter whether the individual is acting alone or in collusion with others.

3. Loss other than *ID theft expenses.* Account balances which arise out of fraudulent charges would be one example of loss other than *ID theft expenses.*

4. An *ID theft* first discovered by the *insured* prior to or after the period for which this coverage applies. This exclusion applies whether or not such *ID theft* began or continued during the period of coverage.

5. An *ID theft* that is not reported to us within 60 days after it is first discovered by the *insured.*

6. An *ID theft* that is not reported in writing to the police.

REPRINTED FROM THE ARCHIVE - THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

## CONDITIONS

The following additional Conditions apply to this coverage.

### A. Assistance and Claims

If you have questions or need help, please call the **ID Recovery Help Line** at **1 (800) 631-9073.**

The **ID Recovery Help Line** is available to provide you with the following.

1. Information on how to respond to a possible *ID theft.*

2. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an *insured* prior to a determination that a covered *identity theft* has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered *identity theft* has not occurred.

As respects Expense Reimbursement Coverage, you must send to us receipts, bills or other records that support your claim for *ID theft expenses.* Such records must be sent to us within 60 days after our request.

### B. Computer Security

Each *insured* has the responsibility to use and maintain security for his or her computer system. This includes the use of personal firewalls and anti-virus software. This also includes the proper disposal of used hard drives.

### C. Services

The following conditions apply as respects any services provided by us or our designees to you or any *insured* under this endorsement.

1. Our ability to provide helpful services in the event of an *ID theft* depends on your cooperation, permission and assistance.

2. All services may not be available or applicable to all individuals. For example, *insureds* who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3. We do not warrant that our services will end or solve all problems associated with an *ID theft.* We do not warrant that our services will prevent future *ID thefts.*

All other provisions of this policy apply.

REPRINTED FROM THE ARCHIVE - THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

This policy is signed on our behalf by our President and Secretary.

James MacPhee
President

Mark C. Touhey
Vice President and Secretary

This policy includes copyrighted material of Insurance Services Office, Inc. with its permission.

CHO-1227/EP 11/89
G22